**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5276-17T3

IN THE MATTER OF THE
GUARDIANSHIP OF SALLY
DINOIA, Alleged to be an
Incapacitated Person.

_____

Submitted November 19, 2019 – Decided December 26, 2019

Before Judges Hoffman, Currier and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Probate Part, Sussex County, Docket No. P-000375-16.

Castano Quigley, LLC, attorneys for appellant County of Sussex, Division of Social Services, Adult Protective Services (Gregory J. Castano, Jr., on the briefs).

Kelly & Ward, LLC, attorneys for respondent Sally DiNoia (Megan A. Ward, on the brief).

PER CURIAM

Appellant County of Sussex, Division of Social Services, Adult Protective

Services (APS), appeals from the June 7, 2018 Chancery Division order

requiring it to pay $43,397.20 in counsel fees to respondent, Kevin D. Kelly (Kelly), a former court-appointed attorney for Sally DiNoia (Sally).[1] We affirm.

I.

On March 15, 2015, based on reports from the Hamburg Police Department, appellant opened an investigation into the well-being of then eighty-five-year-old Sally, who was living in her marital home with her adult son, John DiNoia (John), her primary caregiver for several years. Sally's husband, Paul, previously lived with her in the marital home, but he later moved to live with one of the parties' daughters. Paul passed away in 2017.

Appellant's investigation continued through 2015 and was actively opposed by John, who engaged in litigation to impede it. In December 2015, John filed a complaint in the United States District Court of New Jersey seeking damages and injunctive relief against the Hamburg Police Department, the Director of Sussex County Division of Social Services, a social worker, and a caseworker involved in the investigation of Sally. John's complaint was summarily dismissed in December 2017.

---

[1] Intending no disrespect, we refer to certain individuals by their first names to avoid possible confusion and for ease of reference.

A-5276-17T3

On January 15, 2016, appellant, through the Office of the Sussex County Counsel, filed a verified complaint seeking to declare Sally incapacitated and for the appointment of a guardian over her person and property under N.J.S.A. 52:27D-406 to -425. Through the Sussex County Surrogate's Office, Kelly & Ward, LLC was appointed as counsel for Sally. On May 18, 2016, an order was entered appointing Megan E. MacMullin as temporary guardian for Sally, suspending all powers of attorney, and enjoining John from interfering with her care and treatment. An August 23, 2016 order was entered adjudging Sally an incapacitated person and appointing her daughter, Jennifer DiNoia Magnifico, as the guardian of her person and estate. The restraints against John were continued.

On March 23, 2017, Kelly filed an application for appellant to pay his counsel fees, which was opposed by Sussex County Counsel. On June 7, 2018, the trial court heard oral argument, granted Kelly's application, and entered the order under review.

In his oral opinion, the judge observed the matter was highly contentious and that John endangered his mother's welfare. Sally was noted to have fungus under her breasts, dead bug bites, and extremely poor hygiene. The judge found that John interfered with his mother being evaluated by her treating physician,

Dr. Dennis Fielding, who had not evaluated Sally for approximately two years. Dr. Fielding indicated difficulties were raised by John in scheduling an examination.

The judge also noted that bedbugs were discovered in Sally's condominium unit and on her person. Although an exterminator was arranged to treat the bedbug infestation at the residence with Kelly's assistance, John refused to permit access. The judge found Paul left the residence because of John's obstinance, who actively interfered with his siblings and others, resulting in his mother's isolation and deterioration. John also brought his mother to a March 12, 2016 court proceeding unannounced, contrary to the advice of the two examining physicians, endangering her welfare.

The judge also noted that John was found in violation of litigant's rights for failing to comply with orders directing him to undergo a psychiatric evaluation and cooperate with the guardian. As many as twelve applications at the trial and appellate levels were filed by John, for the most part frivolous, requiring responses from Kelly. The judge described John as "obstreperous and difficult" throughout the proceedings, and determined he did not properly care for Sally, requiring the appointment of a temporary guardian. Interim reports

had to be prepared, and many of Kelly's services were performed on an emergent basis.

In support of his decision, the judge found that "John [] was an active interferer with this action from the moment it began. And, without the steps taken by Kelly to meet that interference, Kelly's client would have suffered even more than she did." Further, the judge stated:

> it is not equitable on the one hand for APS not to carry out all of its statutory duties, leave them to Kelly, and then object to payments to Kelly for his fees when APS took no action, and then being critical of Kelly having done that, when the [c]ourt is of the view that it was absolutely essential to [Sally's] welfare that Kelly take action in that regard.

APS also failed to conduct the financial investigation and analysis of Sally's assets and debts as required by Rule 4:86-2(b) and ignored requests to produce records. Sally and her husband were receiving Social Security benefits and had minimal assets. Thus, the judge found compelling reasons for appellant to pay Kelly's fees. This appeal ensued.

On appeal, appellant argues that the trial judge's decision must be reversed because it lacks any basis in law and undermines the public policy goals of the Adult Protective Services Act (the Act).[2] Respondent seeks affirmance.

---

[2] N.J.S.A. 52:27D-406 to -425.

Whether a court rule permits an award of counsel fees is a matter of legal interpretation. Wiese v. Dedhia, 188 N.J. 587, 592 (2006). Accordingly, we review de novo the determination of whether counsel fees are permissible. Occhifinto v. Olivo Constr. Co., 221 N.J. 443, 453 (2015). So long as a trial judge's decision is authorized by law, we will not overturn a decision to award or withhold counsel fees, absent "a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). "Where a trial court has authority to grant attorney's fees, [however,] we grant it broad discretion and will not disturb its decision unless there has been a clear abuse of that discretion." DeMarco v. Stoddard, 434 N.J. Super. 352, 381 (App. Div. 2014).

We first address the standard of review applicable to this matter. Appellant contends its appeal involves the review of an issue of law—whether APS can be ordered to pay the fees of a court-appointed attorney in a guardianship matter pursuant to the Act—requiring a de novo standard of review. Respondent counters that because a judge has the authority to compel payment of fees for a court-appointed attorney, our review is deferential, and governed by the abuse of discretion standard.

Guardianship actions for incapacitated persons are governed by Rule 4:86 and N.J.S.A. 3B:12-24 to -28. Rule 4:86-4(e) states that "[t]he compensation of the attorney for the party seeking guardianship, appointed counsel, and of the guardian ad litem, if any, may be fixed by the court to be paid out of the estate of the alleged incapacitated person or in such other manner as the court shall direct." The official comments to Rule 4:86-4 also state that "paragraph (e) of the rule makes clear that the attorney for a party seeking appointment of a guardian for an alleged incompetent is entitled to an attorney's fee award." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:86-4 (2020).

Accordingly, while the American Rule does not allow for the shifting of attorney's fees, Rule 4:86-4(e) is an exception to that general rule. See R. 4:42-9(a)(3). ("In a guardianship action, the court may allow a fee in accordance with R. 4:86-4(e) to the attorney for the party seeking guardianship, counsel appointed to represent the alleged incapacitated person, and the guardian ad litem.").

Because the trial court has the authority to compel fees for a court-appointed attorney under Rule 4:86-4(e), our review is deferential, and therefore governed by the abuse of discretion standard.

A-5276-17T3

We addressed the responsibilities of an organization providing protective services in the case of In re Farnkopf, 363 N.J. Super. 382, 386 (App. Div. 2003):

> If there is "reasonable cause" to believe a "vulnerable adult has been the subject of abuse, neglect or exploitation," the provider is required to "determine the need for protective services" and make formal referrals to state, county and local agencies, and hospitals and organization, for services. N.J.S.A. 52:27D-411[a]. The provider is also required to "follow up on referrals," N.J.S.A. 52:27D-411[a], and may seek injunctive relief against a caretaker or any other person who interferes with the providing of protective services, N.J.S.A. 52:27D-412[a].

The Act defines "protective services" as:

> voluntary or court-ordered social, legal, financial, medical or psychiatric services necessary to safeguard a vulnerable adult's rights and resources, and to protect a vulnerable adult from abuse, neglect or exploitation. Protective services include, but are not limited to: evaluating the need for services, providing or arranging for appropriate services, obtaining financial benefits to which a person is entitled, and arranging for guardianship and other legal actions.

> [N.J.S.A. 52:27D-407.]

In Farnkopf, we determined that fee shifting to an organization providing protective services to pay counsel fees of a court-appointed counsel is not warranted unless the trial judge finds that one of the exceptions to the American

Rule is present. In the event such an exception does not exist, then the fees must be paid from the estate only.

Here, the judge emphasized the exceptional efforts expended by Kelly:

> Now it bears repeating and further explication that [John] was an extraordinary impediment to [the] care for his mother and ultimate relief in this case. The record includes no fewer than six or eight and probably as many as a dozen applications that – at the [t]rial and [a]ppellate levels that [John] filed along the way, all of which it was necessary for Kelly to respond to.
>
> What [John] was seeking to do was to intervene in the case, to regain control . . . of his mother.
>
> . . . .
>
> It got so bad that eventually the [c]ourt, on its own motion . . . filed an order to show cause . . . directed to [John] filed May 31, 2017 ordering him to show cause why the [c]ourt should not enter an order requiring him to pay counsel fees and costs of any party opposing any motion [John] files in the future in this action . . . .
>
> . . . .
>
> And, ultimately an order was entered on June 21 of 2017 against [John] directing the Surrogate to receive any motions filed by [John] as received, not filed, and to forward motion to the [j]udge presiding over probate matters for review.

9

The judge found respondent's submission persuasive, and that APS protracted the litigation by not supplying the financial analysis and investigation required by Rule 4:86-2(b). Had APS done so, it would have been readily apparent from the onset of the proceedings that Sally did not have the funds or ability to pay for professional services. Instead, the temporary guardian and court-appointed counsel had to perform these tasks, which should have been done at APS's expense.

In addition, the judge considered all of appellant's opposing papers, which raised virtually the same objections are presented in this appeal. We therefore find no abuse of discretion in the court awarding respondent counsel fees.

The remaining issues raised by appellant do not have sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5276-17T3